UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ELIZABETH SIRACUSE,

                Plaintiff,

          - against -

PROGRAM FOR THE DEVELOPMENT OF HUMAN
POTENTIAL,

                Defendant.
-----------------------------------------------------------------x

07 Civ. 2205 (CLP)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Margaret McIntyre
Attorney for Plaintiff
64 Fulton Street, Suite 502
New York, NY 10038
Ph: (212) 227-9987

John A. Beranbaum, Esq.
Beranbaum Menken LLP
Attorneys for Plaintiff
80 Pine Street, 33rd Floor
New York, NY 10005
Ph: (212) 509-1616
Fax: (212) 509-8088

Dated: New York, New York
       July 20, 2011

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**.................................................................................................. i

**PRELIMINARY STATEMENT** .........................................................................................1

**ARGUMENT** .......................................................................................................................1

       **DEFENDANT'S RULE 50(b) MOTION IS PROCEDURALLY SUBSTANTIVELY FLAWED AND SHOULD BE REPEALED** .... ........................1

          **A.**     **Defendant is Barred from Pursuing Its JMOL Motion Because It Did Not Preserve at Trial the Specific Issue on which the Motion is Founded** ................................................................................1

          **B.**     **There was Sufficient Evidence For the Jury to Find That an RY Supervisor Job Existed** ............................................................. 3

**CONCLUSION** ...................................................................................................................8

# TABLE OF AUTHORITIES

**Federal Cases**

*Burger v. New York Inst. Of Tech.*, 94 F.3d 830, 834 (2d Cir. 1996)..................4

*Gierlinger v. Gleason,* 160 F.3d 858, 869 (2d Cir. 1998) ..................2

*Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 81 (2d Cir. 1983)..................4

*Kaytor v. Electric Boat Corp.,* 609 F.3d 537, 545 (2d Cir. 2010)..................3

*Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993),
  *cert. denied,* 511 U.S. 1052 (1994)..................2

*McCardle v. Haddad,* 131 F.3d 43, 51 (2d Cir. 1997) ..................2

*Piesco v. Koch,* 12 F.3d 332, 341 (2d Cir. 1993)..................2

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ..................3, 7

*Singh v. New York City Off-Track Betting,* 03 Civ. 5238 (JGK),
2005 WL 1354038 (S.D.N.Y. June 8, 2005)..................7

*Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363 (2d Cir. 1988)..................2

**Statutes and Court Rules**

Fed.R.Civ.P 50(a)..................*passim*

Fed.R.Civ.P 50(a)..................*passim*

## PRELIMINARY STATEMENT

Plaintiff, Elizabeth Siracuse, by her counsel, submits this Memorandum of Law opposing defendant Program for the Development of Human Potential's Motion for Judgment as a Matter of Law. The issue that defendant claims lacks an evidentiary basis, that an RY supervisor job existed at the time of Siracuse's non-promotion, was litigated in full at trial. The jury rejected this very same contention when it answered "yes" to the Jury Verdict Form question:

> Has the plaintiff established, by a preponderance of the evidence, that the defendant failed to promote her to an RY Supervisor position that existed at that time?

Defendant's Motion for Judgment as a Matter of Law ("JMOL") is essentially a re-hashing of its argument made at trial that the jury rejected. The argument is no more persuasive when made post-trial, and should likewise be rejected by the Court.

## ARGUMENT

### DEFENDANT'S RULE 50(b) MOTION IS PROCEDURALLY AND SUBSTANTIVELY FLAWED AND SHOULD BE DENIED

**A. Defendant is Barred From Pursuing its JMOL Motion Because It Did Not Preserve at Trial the Specific Issue on which the Motion is Founded**

Defendant has moved for Judgment as a Matter of Law ("JMOL") under Fed.R.Civ.P. 50(b) on grounds that there was an insufficient evidentiary basis for the jury to find that an RY Supervisor position existed to which Siracuse could have been promoted. However, defendant failed to raise this issue in its Rule 50(a) motion before the case was submitted to the jury and, therefore, did not preserve the issue for consideration in a Rule 50(b) JMOL motion.

Rule 50(a) provides that a party making a JMOL motion must, before the submission of the case to the jury, "specify the judgment sought and the law and facts that entitle the movant to

1

the judgment." The Rule 50(b) JMOL motion is essentially a post-trial renewal of the earlier Rule 50(a) motion. *See Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *cert. denied*, 511 U.S. 1052 (1994). A Rule 50(b) motion may only be made on the basis of the grounds that were "specifically raised in the prior motion for [JMOL]." *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997). Put differently, the Rule 50(a) JMOL motion "must at least identify the specific element that the defendant contends is insufficiently supported." *Gierlinger v. Gleason*, 160 F.3d 858, 869 (2d Cir. 1998) (quoting *Galdieri-Ambrosini v. Nat'l Realty & Development Corp.*, 136 F.3d 276, 286 (2d Cir. 1998)). "[T]he specificity requirement is obligatory." *Lambert v. Genesee Hosp.*, 10 F.3d at 54.

At trial, defendant's Rule 50(a) challenge to Siracuse's New York City Human Rights Law (NYCHRL) claim was limited to the following: "As to the Human Rights Law, again, I believe there's insufficiency of evidence in general to support that her health was a reason, because the defendant has put forth a legitimate reason." (Tr. 925:13-16) Counsel then went on to address why plaintiff had not presented sufficient evidence of punitive damages, an issue not raised by this motion. Thus, it is indisputable that in its Rule 50(a) motion defendant failed to raise the issue of insufficient evidence to show the existence of an RY supervisor position.

The language used by defendant in its Rule 50(a) motion was conclusory and boilerplate. A generalized challenge or conclusory statement, such as the one here, cannot, as a matter of law, preserve an issue for a subsequent Rule 50(b) motion. *See Gierlinger*, 160 F.2d at 869; *Piesco v. Koch*, 12 F.3d 332, 341 (2d Cir. 1993). In *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363 (2d Cir. 1988), a boxer brought suit claiming that his promoter and lawyer committed fraud by misrepresenting their financial condition. After plaintiff prevailed at trial, defendants brought Rule 50(b) motions on grounds that there was no proof that they had made an affirmative

misrepresentation. The court found that the defendants were procedurally barred from bringing a Rule 50(b) JMOL motion because their prior Rule 50(a) motions were insufficiently specific. One of the defendants, the court noted, "stated simplistically that 'plaintiff has failed to make out a prima faci[e] case,'" and then renewed the motion with the statement, "'I don't believe there is any evidence before this jury of any fraud.'" 861 F.2d at 368.

The lack of specificity in PDHP's Rule 50(a) motion is little different from the one in *Smith*. In an employment discrimination case, it is hard to make a more generic, all-inclusive challenge than the one made here: "defendant has put forth a legitimate reason." The statement is just as general, and equally inadequate, as the one in *Smith* that "plaintiff has failed to make out a prima facie case" of fraud.

B.  **There was Sufficient Evidence For the Jury to Find that an RY Supervisor Job Existed**

Even if defendant's JMOL motion is not barred for procedural failings, as a substantive matter, the motion should be denied because there was a legally sufficient evidentiary basis for the jury to conclude that an RY Supervisor job existed when Siracuse applied and was denied a promotion. In reviewing a Rule 50(b) motion, the Court considers all the evidence in the light most favorable to the nonmovant, disregards evidence favorable to the movant that the jury is not required to believe, and gives credence to the evidence favoring the nonmovant and evidence favoring the movant only to the extent that it is uncontradicted and unimpeached coming from disinterested witnesses. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).

PDHP argues that after the termination of the previous RY supervisor, Linda Babolcsay, the RY supervisory position was eliminated, and, thus, there was no job to which plaintiff could have been promoted. Defendant relies on the facts that a) after Babolscay's termination, there

3

was a reduction of PDHP's headcount by one, and b) the school where Babolscay had worked, Christ the King High School, ceased having an RY program after her termination. (*See* Defendant's Memorandum of Law at 3-4).

As an initial matter, the fact that PDHP underwent a reduction-in-force does not immunize it from liability for discrimination. It is well settled that even during a legitimate workforce reduction, an employer may not make decisions regarding employees for unlawful discriminatory reasons. *See Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 81 (2d Cir. 1983). The fact that defendant had one less employee in its RY Program does not insulate it from liability for discriminating in the way it assigned the supervisory duties of the RY program, none of which were eliminated with Babolcsay's termination. *Cf. Burger v. New York Inst. Of Tech.*, 94 F.3d 830, 834 (2d Cir. 1996) (in a reduction-in-force, where most of the employee's duties were not eliminated, but transferred to others, the triable issue arises of whether the employer's decision was really a choice of which person to layoff, not which position to eliminate).

Defendant seems to take the position that in order to prevail Siracuse needed to show that Babolcsay's job, in all its particulars including location, still existed after her termination. But such an argument conflicts with the language of the verdict sheet, agreed to by defendant, that asks whether "*an* RY Supervisor position," not "*the* RY Supervisor position" existed. Similarly, the Jury Verdict Form did not ask the jury whether it found that PDHP discriminated against Siracuse by failing to promote her to Linda Babolcsay's position, but to some RY supervisory job. It is enough that there was evidence at trial showing a position existed with supervisory duties to oversee the RY program. The evidence showed, and the jury found, that such a position existed, and it was held by Ellen Fitzpatrick.

There was overwhelming trial evidence that after Babolcsay's termination, PDHP promoted RY Counselor Fitzpatrick to an RY supervisory job in which she assumed the great majority of Babolcsay's supervisory responsibilities for the RY program. Fitzpatrick testified as much:

- Fitzpatrick testified that she considered the RY position that she applied for in late May or June 2005 to be supervisory. (Tr. 838: 8-11; 838:21 - 839:4).

- When offering Fitzpatrick the job, PDHP officials made clear that it was a supervisory position by a) stating the position ordinarily required someone to hold a Masters degree, PDHP's customary requirement for a supervisory position (Tr. 839:24 - 840:6); and b) agreeing to give her a raise of $5000 (Tr. 840:9-15), the difference between her and Babolcsay's salaries (Tr. 642:20 - 643:12, Ex. O).

- Fitzpatrick believed that she was taking over Babolscay's job. (840:19 - 22).

- Fitzpatrick testified that upon her promotion she had the following supervisory responsibilities for the RY program: holding individual weekly supervisory meetings with each RY Counselor; holding monthly group meetings with all the RY Counselors; doing monthly classroom observations of each of the RY Counselors; completing the necessary paperwork for the program; and even preparing performance reviews for the RY Counselors. (Tr. 849:2 - 850:5).

- Fitzpatrick wrote a letter of reference for an RY Counselor, Anna Steegman, identifying herself on the letter as "RY Supervisor," and stating that she "served as her supervisor." After being shown the letter, Fitzpatrick confirmed in her testimony, that she was Steegman's supervisor. (Tr. 851:10-20).

- For her title, Fitzpatrick used interchangeably, RY Coordinator and RY Supervisor. (Tr. 851:19 - 852:2).

Another, third-party witness, Anna Steegman, a former RY Counselor, confirmed Fitzpatrick's testimony. She testified that:

- Fitzpatrick told her, upon learning of Babolscay's discharge, that there was an opening for an RY supervisor (Tr. 67:13-23).

- She considered Fitzpatrick to be her supervisor (Tr. 58:4-11).

- Fitzpatrick performed supervisory duties for the RY program (Tr. 64:14-22) .

Sonia McAuley, PDHP Regional Coordinator, was Ellen Fitzpatrick's supervisor during

5

the 2004-2005 school year. McAuley's supervisory duties in connection with the RY program were minimal, holding monthly meetings with Fitzpatrick "to find out what was going on in the, her own groups and with ... *her people, who she was working with on a regular basis.*" (Tr. 94:10-16) (emphasis added), and meeting with the RY Counselors in the beginning of the school year "to introduce myself as Ellen's supervisor." (*Id.*) In addition, if a student needed to be referred to a mental health provider, Fitzpatrick would do the initial assessment and the talk it over with McAuley. (Tr. 856: 14-19). McAuley's RY program duties took up just 10 to 15% of her time. (Tr. 526: 1-4) Thus, Babolcsay's RY supervisory duties were not split up equally; Fitzpatrick assumed the great majority of them and generally oversaw the program.

If there was any doubt, McAuley's testimony made clear that Fitzpatrick was an RY supervisor:

- Shortly after she received the memo about Babolscay's termination, PDHP's Borough Director told her that "they had made a decision that Ellen Fitzpatrick would be the person replacing Linda Babolscay." (Tr.91:19-23).

- The promotion that Fitzpatrick received was to a position "overseeing the other people." (Tr. 93: 20-25).

- Fitzpatrick had supervisory responsibilities (Tr. 94:17-23) and ran the RY Program. (Tr. 101:14-15).

- McAuley evaluated "supervision abilities" when preparing Fitzpatrick's performance evaluation. (Tr. 96:2-7).

- McAuley was asked to take over the role that Julia McEvoy, Babolcsay's supervisor, held, supervising "the person who was running the program," Ellen Fitzpatrick. (Tr. 101:9-15)

Defendant places great weight on the fact that after Babolcsay's termination there was no longer an RY program at Christ the King High School. As noted, the issue is whether "*an* RY supervisor position" existed, not necessarily whether the position was identical in every administrative detail to the one Babolscay held. Certainly, the fact that Siracuse, if promoted to

RY supervisor, would likely have been stationed at a different school from where Babolcsay worked does not change the fact that the two jobs were fundamentally the same.

Siracuse presented persuasive and uncontroverted testimony, which must be given credence, *see Reeves,* 530 U.S. at 150, that as an RY supervisor she could have run the program from The Mary Lewis Academy where she had worked for the past six years. (*See* Tr. 125:13-24; 313:2-7; 322:9-19; 324:8-14; 325:17 - 327:14; 392:15 - 397:7). Siracuse testified that the principal of The Mary Louis Academy, Sister Kathleen, would have jumped at the opportunity to run the RY program, at no cost, out of her school and help her at-risk students. (Tr. 392:15 - 397:7) Siracuse pointed out that before 2004 she had asked Sister Kathleen's consent to bring in a number of new programs to the School, also at no cost, and had always received her approval. (*Id.*)

*Singh v. New York City Off-Track Betting,* 03 Civ. 5238 (JGK), 2005 WL 1354038 (S.D.N.Y. June 8, 2005), relied upon by defendant, is factually distinguishable. There, the district court granted summary judgment as to Singh's non-promotion claim on grounds, in part, that the position he sought was eliminated. The evidence upon which the district court relied in granting summary judgment, however, was of a much different order from the evidence that the jury heard in this case. In *Singh,* the plaintiff's supervisor retired and plaintiff expressed interest in, but was denied, the job. After the plaintiff was denied the position, the defendant did not seek applicants for the job and never filled it. The two employees whom Singh pointed out as receiving promotions instead of him were in different divisions from him and their promotions were "entirely unrelated" to the supervisor's retirement. *Id.* *9. Moreover, Singh's claim that the two employees were promoted, "in substance," to his former supervisor's job was based, in the words of the court, on mere "conclusory allegations." *Id.* *29-30.

Unlike in *Singh*, where the supervisory job was never filled, Fitzpatrick was promoted to fill an RY supervisory position that was, "in substance," *Singh,* 2005 WL 1354038 *9, Babolcsay's old job. Moreover, Siracuse and Fitzpatrick actually applied for the same job. (Tr. 141:18-143:14; 846:9-14) Finally, Fitzpatrick's promotion to the position was directly related to Babolcsay's termination. *See* Tr.91:19-23 (McAuley testifying that the Borough Director told her that "they had made a decision that Ellen Fitzpatrick would be the person replacing Linda Babolscay.")

## CONCLUSION

For all of the above reasons, the Court should deny defendant's Motion for Judgment as a Matter of Law, and enter Judgment for the plaintiff.

Dated: New York, New York
       July 20, 2011

Respectfully submitted,

_____/s_____
MARGARET McINTYRE (MM 2099)
Attorney for Plaintiff
64 Fulton Street, Suite 502
New York, New York 10038
(212) 227-9987

BERANBAUM MENKEN LLP

By: _____/s_____
John A. Beranbaum, Esq.
Attorneys for Plaintiff
80 Pine Street, 33rd Floor
New York, New York 10005
(212) 509-1616