Marc J. Monte, Attorney at Law (MM-0463)
Wingate, Kearney & Cullen, LLP
45 Main Street, Suite 1020
Brooklyn, New York 11201
Tel. 718-852-5900—Fax 718-852-8168

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ELIZABETH SIRACUSE., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| - against - | ) Index No. 07cv2205(CLP)<br>)<br>) |
| ROMAN CATHOLIC DIOCESE OF BROOKLYN and PROGRAM FOR THE DEVELOPMENT OF HUMAN POTENTIAL, | ) **MEMORANDUM OF**<br>) **LAW**<br>)<br>)<br>) |
| Defendants | )<br>) |

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant, The Department of Education, Diocese of Brooklyn s/h/a "Program for the Development of Human Potential" ("PDHP"), submits this Reply Memorandum of Law in support of its Motion for Judgment as a Matter of Law Pursuant to FRCP 50.

### QUESTION PRESENTED

1. Must the Court set aside the jury verdict for the Plaintiff herein where the Plaintiff has not established a legally sufficient evidentiary basis for a reasonable jury to find for Plaintiff?

Answer: Yes.

1

## POINT I: Defendant's Motion Pursuant to FRCP 50(b) is Procedurally Correct

Defendant properly moved for judgment as a matter of law at the "close"[1] of Plaintiff's case. The basis of the motion—the issue of Defendant's legitimate, non-discriminatory basis for not promoting Plaintiff—was memorialized in both the trial transcription and Plaintiff's opposition papers. It is notable that Plaintiff has chosen to cite a mere 32 words out of eight transcription pages dedicated to Defendant's Rule 50(a) motion. In doing so, Plaintiff attempts to deceive the Court as to the issues raised by Defendant.

Defendant refers to the "legitimate reason" for not promoting Plaintiff, as Plaintiff has conceded in her opposition. In fact, Judge Pollak indicates a perfectly clear understanding that the Defendant's stated basis for its 50(a) motion was that "defendant has put forth a legitimate reason" (T.925: 15-16), and a clear understanding of just what that "legitimate reason" is:

> MR. CEA: It leaves no room for the jury but to go to a finding for plaintiff, even if they don't believe the job existed.
> MS. McINTYRE: That's not true. They have to go to number 3.
> THE COURT: The problem I have, Mr. Cea, is that it is part of your defense, so it's your claim that there was no position.
> MR. CEA: Yes.
> THE COURT: That's your legitimate, nondiscriminatory reason for arguing that she was not discriminated against.
> (T.919: 20-25; T.920: 1-6)

There can be no doubt that a stated basis for Defendant's Rule 50(a) motion was that no RY Supervisor position into which Plaintiff could be promoted existed at the relevant time. That

---

[1] Plaintiff's attempt to rely upon a narrow reading of the law is remarkable considering that Plaintiff's and Defendant's witnesses were produced out-of-turn and intermingled to the extent that Plaintiff rested her case with merely one more Defendant's witness to be produced.

2

Plaintiff has chosen to focus on one sentence and ignore the larger Record discussion fails to support her unfounded opposition.

Rule 50(a) reads:

> (a) Judgment as a Matter of Law.
> (1) In General.
> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> (2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

It is respectfully submitted that Defendant had satisfied the clear conditions of Rule 50(a), as is evident in the trial transcription at the pages noted above. Based upon the discussion of Defendant's motion documented in the transcription, it cannot be reasonably said that the Plaintiff was not on notice of Defendant's contention that the "legitimate reason" for not promoting Plaintiff was that an RY Supervisor position was not available at the relevant time. In her brief, Plaintiff relies upon the Second Circuit's decision in <u>Gierlinger v. Gleason</u>, 160 F3d 858, 869 (2d Cir. 1998), which in turn relies upon its slightly earlier decision in <u>Galdieri-Ambrosini v. National Realty & Dev. Corp.</u>, 136 F.3d 276 (2d Cir. 1998). However, a closer examination of the earlier decision reveals that the Second Circuit had a very practical purpose in mind in emphasizing the "specificity" requirement of 50(a):

> The ultimate question is whether the motion, either of itself or in the context of the ensuing colloquy, was sufficiently specific to alert the opposing party to the supposed deficiencies in her proof.

> If specificity was lacking, JMOL may neither be granted by the district court nor upheld on appeal unless that result is "'required to prevent manifest injustice.'" *Cruz v. Local Union No. 3*, 34 F.3d at 1155 (quoting *Baskin v. Hawley*, 807 F.2d at 1134).

Galdieri-Ambrosini, 136 F.3d at 287.

As such, there are two fatal flaws in Plaintiff's argument. First, at no time in her brief does Plaintiff allege that she was not aware that Defendant believed that was a lack of evidence to support that Plaintiff's health was the basis for her not being promoted. As quoted in Plaintiff's brief:

> As to the Human Rights Law, again, I believe there's insufficiency of evidence in general to support that her health was a reason, because the defendant has put forth a legitimate reason. (T.925: 13-16).

Particularly in the context of the earlier discussion of the "legitimate reason" (quoted *infra*, (T.919: 20-25; T.920: 1-6)), in which Plaintiff's counsel participated, it is impossible to believe that Plaintiff's counsel was not on notice of the subject of the instant application. That Defendant also stated its belief that there was insufficient evidence for the jury ruling for the Plaintiff on her claim of retaliation under FMLA is of no moment: the jury denied that claim out of hand. No coherent reading of Rule 50(a) can hold that the movant is limited to a single point of contention in its 50(a) motion. Simply stated, Plaintiff is asking the court to ignore part of Defendant's motion.

The second fatal flaw in Plaintiff's opposition is that to deny Defendant's motion on purely procedural grounds would result in a substantial injustice. The Galdieri-Ambrosini court explicitly noted that the trial court may grant a Rule 50 motion if such is "required to prevent manifest injustice". Galdieri-Ambrosini, 136 F3d at 287. In addition to the small jury award of $78,000.00 obtained at trial, Plaintiff is now seeking over $380,000.00 in attorney's fees. As it is

4

believed by Defendant that – as the jury award was *exactly* equal to Plaintiff's current annual salary as testified to at trial (T.379: 10) – the jury's finding of discrimination was merely a compromise to permit a modest award where they otherwise did not believe that the Defendant discriminated against Plaintiff. In doing so, the jury needed to find, based on question number 3, that there existed an RY Supervisor position at the relevant time which was available for Plaintiff's demanded promotion. As this is simply not in evidence, to permit Plaintiff a $400,000.00+ windfall (of which the jury was not aware when awarding her the $78,000.00) where the evidence demands otherwise would result in a grave, quantifiable injustice.

**POINT II:** **Even By Plaintiff's Own Concession the Evidence Before the Jury was Clearly Insufficient to Support a Finding that an RY Supervisor Position**

It is wholly disingenuous for Plaintiff to argue that, despite Defendant's showing at trial that there were no RY Supervisor positions open at the time Plaintiff demanded a promotion[2], the jury could still reasonably conclude that the Plaintiff had been discriminated against. Plaintiff boldly testified at trial that Defendant was not required to fire someone to give her a promotion because of her illness. (T.312:10-12). Effectively, Plaintiff has painted herself into the proverbial corner by conceding the position wasn't open, and that the Defendant was under no legal obligation to open a position for her. The "reduction-in-force" Plaintiff concedes in her brief resulted in elimination of the RY Supervisor position for which Plaintiff allegedly applied. In so conceding, Plaintiff is conceding that no RY Supervisor position existed at the relevant time.

---

[2] Plaintiff concedes that Defendant's "reduction-in-force" is a **fact** and therefore that the position eliminated (the RY Supervisor position) did not exist after Linda Babolcsay

5

Therefore, it cannot be said that "the defendant failed to promote [Plaintiff] to an RY Supervisor position that *existed at that time*". [Emphasis added].

Notably, Plaintiff's misinterpretation of the Supreme Court's decision in Reeves v. Sanderson Plumbing Products, Inc., 530 US 133 (2000) borders on raw sophistry in its attempt to obscure the appropriate standard of review. Per the Reeves court:

> In the analogous context of summary judgment under Rule 56, we have stated that the court must review the record "taken as a whole." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). And the standard for granting summary judgment "mirrors" the standard for judgment as a matter of law, such that "the inquiry under each is the same." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-251, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). **It therefore follows that, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record.** [Emphasis added]
> Reeves, 530 US at 150.

It is ludicrous to argue that Reeves empowers the trial court to completely disregard compelling evidence presented by a movant, particularly when the non-movant, as here, has failed to establish that the movant's evidence has been contradicted or impeached. Herein, even Plaintiff concedes that the Defendant reduced its workforce by one and that the position of RY Supervisor as constituted with Linda Babolcsay was eliminated. The argument that a new RY Supervisor position could have been created for the Plaintiff is, again, pure sophistry. The Plaintiff has not shown, either at trial or in her opposition to this application, that she ever applied for a re-constituted RY Supervisor position. The position Plaintiff alleges she applied for was eliminated - which Plaintiff concedes. As with much of Plaintiff's testimony, Plaintiff discusses in her brief the possibility of being an RY Supervisor at The Mary Lewis Academy, where she had already been working as a non-RY counselor. Plaintiff argues:

> Siracuse presented persuasive and uncontroverted testimony, which must be given credence, *see Reeves,* 530 U.S. at 150, that as an RY supervisor she could have run the program from The Mary Lewis Academy where she had worked for the past six years. *(See* Tr. 125:13-24; 313:2-7; 322:9-19; 324:8-14; 325: 17 - 327:14; 392: 15 - 397:7). Siracuse testified that the principal of The Mary Louis Academy, Sister Kathleen, would have jumped at the opportunity to run the RY program, at no cost, out of her school and help her at-risk students. (Tr. 392:15 - 397:7) Siracuse pointed out that before 2004 she had asked Sister Kathleen's consent to bring in a number of new programs to the School, also at no cost, and had always received her approval.*(Id.)*

This is hardly compelling to the point of requiring credence as (a) no RY Supervisor position *existed* at The Mary Lewis Academy at any relevant time; (b) the Plaintiff never requested an RY Supervisor position at The Mary Lewis Academy; (c) the Plaintiff never even asked the Principal at The Mary Lewis Academy whether she would consider having the RY program in her school[3]; and (d) there is no testimony from the Principal of The Mary Lewis Academy supporting the argument that her school would have, or even could have, housed an RY Program. As to this last point, we have only Plaintiff's vague hearsay. Regardless, the question of a hypothetical RY Supervisor position was **not** put to the jury.

Plaintiff's argument against Defendant's invocation of <u>Singh v. NYC Off-Track Betting</u>, 2005 US Dist LEXIS 11098 (2005) is similarly misguided. Plaintiff argues that <u>Singh</u> is factually distinct because the claim in that action was based upon "conclusory allegations". However, Plaintiff provides nothing but conclusory allegations in support of her opposition. Most notably, Plaintiff absolutely fails to address Defendant's argument that Plaintiff has offered merely one, well-refuted item of evidence in support of the argument that an RY Supervisor position to

---

[3] Of course, Plaintiff cleverly attempts to avoid this inconvenient fact by alleging that she had discussions with the Principal generally about new programs, but doesn't specifically cite the RY Program. It stands to reason that Plaintiff would have testified to specifically requesting The Mary Lewis Academy house an RY Program had she actually done so. The evidence from Plaintiff's own testimony is that an RY Program at The Mary Lewis Academy was never discussed or even considered.

which Plaintiff could be promoted existed at the relevant time. (Plaintiff's Exhibit 86) In fact, Plaintiff provides no discussion of the absence of reliable documentary evidence tending to support Plaintiff's claims. Plaintiff's own Exhibits 89 and 90 contemporaneously document the elimination of the position of RY Supervisor—a fact that is ignored in Plaintiff's papers.

Plaintiff *does* mention that the employer did not seek applicants for the subject position in Singh after denying the position to the claimant, and that the subject position was never filled. If a factual distinction between Singh and the case at bar exists, it is only as to the fact that PDHP did not seek applicants for the RY Supervisor position *before* Plaintiff's alleged statement of interest, as well as after. Otherwise, the position was never filled—it was eliminated. Plaintiff even concedes this in her opposition papers. In an awkward attempt to cover-up for this, Plaintiff attempts to "create" facts: by stating (in contradiction of her own concession) that "Fitzpatrick was promoted to fill an RY Supervisory position that was, 'in substance,' ... Babolcsay's old job." (Plaintiff's Memorandum of Law in Opposition, page 8) In fact, even Fitzpatrick testified that others actually held that position:

> Q How long was Sonia McAuley the RY supervisor?
> A I don't know, could have been a year, year and a half. I don't remember. I remember who followed her. I just don't know the exact timing of it.
> Q Who followed her, if you can state for the record?
> A Mini Burns. (T.856: 23-25; T.857: 1-3)

Ellen Fitzpatrick was never told she was promoted to either RY Supervisor or RY Coordinator. (T.477: 11-21) This testimony was neither refuted at trial nor addressed in Plaintiff's opposition papers.

Regarding Fitzpatrick's understanding of the RY Supervisor position, she testified that she did not know what those were:

> Q   Your supervisor was Linda Babolcsay, you say, during this period; right?
> A   That's correct.
> Q   What were her responsibilities
> A   You know, I hate to say it, but you would have to ask her. I assume her responsibilities were to be a supervisor of the RY staff and to teach -- I know she also taught two classes at Christ the King at the time, and I think she attended administrative meetings.

Regarding Fitzpatrick's letter of recommendation for Anna Steegman, it was shown at trial that (a) Fitzpatrick did not have the authority to make recommendations for PDHP staff (T.477: 5-10) and (b) the letterhead used on that recommendation was not PDHP's recognized letterhead. (T.480:15-23).

Plaintiff finally falls back on Sonia McAuley's testimony as providing "evidence" of Fitzpatrick's alleged promotion and the existence of the RY Supervisor position. However, she testified that she was not involved in the decision-making process regarding Linda Babolcsay's position:

> Q   Did you play any role in the decision over what to do to replace Linda Babolcsay?
> A   No.
> Q   Do you know who did?
> A   That it would be the decision, I would think, of the executive director.
> Q   And would she have made that in consultation with anyone else?
> A   I would assume with the Borough directors. (T.92: 11-19)

McAuley also testified that the RY program at Christ the King High School was discontinued after Linda Babocsay's resignation (thus leaving no open positions – supervisory or otherwise – in the RY program at the time Plaintiff alleges she expressed interest in Babolcsay's job):

| | |
|---|---|
| Q | Do you recall if there was a program at Christ the King in 2004? |
| A | That was where Linda Babolcsay had worked and after she left that group, RY group discontinued there. |
| Q | Is that RY group discontinued there? |
| A | Yes. They were not doing the RY Program in Christ the King after Linda Babolcsay left. (T.111: 7-13) |

Plaintiff relies on McAuley's testimony that "I was to do the job that Julia McEvoy had one previously which is to just basically oversee the functioning of the RY program and directly supervise the person who was running that program". (T.101: 10-13) However, McAuley actually testified that Ellen Fitzpatrick was "running" the RY Program in the academic year 2003-2004. (T.101: 14-21). It has not been suggested, even by Plaintiff, that such was true, as Linda Babolcsay was still in place during that year. This must raise questions about the truthfulness of McAuley's testimony, which ended with an admission that she is the Plaintiff's friend. (T.117: 6-8).

Ultimately, none of the testimony relied upon by Plaintiff in her opposition papers supports the idea that an RY Supervisor position existed at the time Plaintiff sought a promotion. As such, there is no evidentiary basis for a reasonable jury to find that such a position existed at that time. Accordingly, Defendant respectfully moves this Court to set aside the jury's finding on item number 3 on the Jury Verdict form and therefore dismiss Plaintiff's cause of action under the New York City Human Rights Law.

# CONCLUSION

## THE JUDGMENT OF THE JURY SHOULD BE SET ASIDE.

Dated: Brooklyn, New York
August 1, 2011

Respectfully submitted,

_____
Marc J. Monte, Esq. (MM0463)
Richard J. Cea, Esq. (RC6301)
Wingate, Kearney & Cullen, LLP
*Attorneys for Defendant*
45 Main Street, Suite 1020
Brooklyn, New York 11201
Tel. 718-852-5900